1

2        **UNITED STATES DISTRICT COURT**

3        **DISTRICT OF NEVADA**

4

5   JOHN MICHAEL ALLINGER            )
                                     )        3:06-CV-0139-LRH (VPC)
6            Plaintiff,              )
                                     )
7        vs.                         )        **REPORT AND RECOMMENDATION**
                                     )        **OF U.S. MAGISTRATE JUDGE**
8   E.K. McDANIEL, *et al.*,         )
                                     )
9            Defendant.              )        June 7, 2007
    _____  )

10

11       This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

12  District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

13  U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion to dismiss (#28).

14

15  Plaintiff opposed (#33) and defendants replied (#37).  The court has thoroughly reviewed the

16  record and the motions and recommends that defendants' motion to dismiss (#28) be granted in

17  part and denied in part.

18                            **I. HISTORY & PROCEDURAL BACKGROUND**

19       Plaintiff John Michael Allinger ("plaintiff"), a *pro se* prisoner, is currently incarcerated

20  at Nevada State Prison ("NSP") in the custody of the Nevada Department of Corrections

21  ("NDOC") (#39).  Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations

22

23  of his First Amendment right to access to the courts, Eighth Amendment right against cruel and

24  unusual punishment, and Fourteenth Amendment right to due process.  *Id.*  Plaintiff names as

25  defendants E.K. McDaniel, Ely State Prison ("ESP") Warden; Debra Brooks, ESP Associate

26  Warden; John Messick, ESP Lieutenant, Shift Supervisor; Steven MacArthur, former ESP

27  Medical Director; Glen Whorton, former NDOC Director; Ted D'Amico, former NDOC Medical

28  Director; Jerry Bainbridge, ESP Sergeant, Correctional Enforcement Response Team; and Wade

Smit, ESP Senior Correctional Officer. *Id*., pp. 2-2A.

Much of plaintiff's complaint stems from a September 23, 2005 fight between other inmates, while plaintiff was on the ESP yard. *Id*., p. 3. Because plaintiff was in close vicinity to the assault, defendants placed him in administrative segregation along with other by-standers. *Id*. In counts I and II, plaintiff alleges that defendants did not provide him with due process prior to his re-classification to administrative segregation and that his conditions of confinement in administrative segregation violated his Eighth Amendment rights. *Id*. pp. 3-5. In count III, plaintiff alleges that defendant MacArthur violated his Eighth Amendment rights by acting with deliberate indifference to his health concerns before, during, and after his time in administrative segregation. *Id*., p. 6. In count IV, plaintiff alleges that while he was in administrative segregation, defendant Smit violated his right to access to the courts by opening and returning his legal mail for improper reasons. *Id*., p. 7. Finally, in count V, plaintiff alleges that defendant Bainbridge retaliated against him by placing him in administrative segregation, and preventing him from returning to his job with the prison law library. *Id*., p. 8.

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are construed in the

2

light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (*quoting Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). However, Rule 12 provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b)(6). Notwithstanding this rule, "a motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleadings happen to be filed with the court." *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578, 582 (9th Cir. 1983). Conversion to summary judgment is at the discretion of the court and the court must take some affirmative action before conversion is effected. *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-44 (9th Cir. 2003).

### 2. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In

inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

**B.   Analysis**

As both the plaintiff and the defendants submit evidence with their motions, the court converts defendants' motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

///

---

[1] Plaintiff had notice that defendants' motion to dismiss could be treated as a motion for summary judgment, as the court issued a *Klingele* order on November 14, 2006 (#29).

### 1. Count I

In count I, plaintiff alleges that defendants violated his procedural due process rights when they placed him in unit one administrative segregation on September 23, 2005, following an assault between other inmates on the ESP yard (#8, p. 4). Plaintiff alleges that he was not involved in the incident. *Id*. Plaintiff admits he received a "Notice of Classification" form before defendants placed him in administrative segregation, which stated his placement was for the "safety and security" of the institution. *Id*. Plaintiff alleges that on September 28, 2005, he had a meeting with caseworker Don Shaulis, during which Shaulis admitted plaintiff was not involved in the assault, but told plaintiff there was nothing he could do to remove him from segregation. *Id*., p. 4-A. Plaintiff further alleges that Shaulis refused to allow him to call witnesses or have inmate counsel present.

### (a) Fourteenth Amendment Procedural Due Process

The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally-protected liberty interest is at stake. *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1995), *citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). Liberty interests can arise both under the Constitution and from state law. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). With respect to liberty interests created under the Constitution, the Supreme Court has stated that

> [i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. The phrase "administrative segregation," as used by the state authorities here, appears to be something of a catchall; it may be used to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer... Accordingly, administrative segregation is the sort of

> confinement that inmates should reasonably anticipate receiving
> at some point in their incarceration.

*Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *receded from on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  The Court held that transfer to administrative segregation is not protected by the Due Process Clause itself.  *Id*.

Regarding state-created liberty interests, in *Sandin v. Conner*, 515 U.S. 472 (1995) the Supreme Court has held that states may under some circumstances create liberty interests protected by the Due Process clause, but that those liberty interests "will be generally limited to freedom from restraint which... impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

### (b) Count I Analysis

Defendants argue that because there is no constitutional prohibition against "mass punishment" or "lockdown," they owed plaintiff no due process prior to placing him in administrative segregation (#28, pp. 14-15).  Plaintiff maintains that due process is required whenever a decision by prison officials results in a significant and atypical deprivation (#33, p. 7).[2]

The court must first determine whether plaintiff has a liberty interest in remaining free from administrative segregation.  Based on *Hewitt*, the court concludes that plaintiff has no constitutionally-created liberty interest.  *Hewitt*, 459 U.S. at 468.  Plaintiff also does not have a state-created liberty interest because his placement in administrative segregation did not impose an "atypical and significant hardship."  *Sandin*, 515 U.S. at 484.  In *Hewitt*, the Court noted that

---

[2] Plaintiff also asserts a number of times that he was not involved in the assault.  This fact is immaterial to the outcome of count I.  As defendants have noted, everyone near the incident was locked up until the prison could investigate.

6

the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is "well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468.  As administrative segregation may be used for many things, including "to break up potentially disruptive groups of inmates," it presumably may be used to house inmates pending an investigation into a serious security incident such as an assault.  *Id*.  Because plaintiff has no liberty interest in remaining free from administrative segregation, defendants owed him no due process.  The court grants summary judgment on count I.

### 2. Count II

In count II, plaintiff alleges that defendants violated his Eighth Amendment right concerning the conditions of his confinement during his stay in administrative segregation.  *Id*., pp. 3-A and 5.  On September 26, 2005, while plaintiff was in segregation for the September 23rd incident, there was a riot in ESP unit one.  *Id*., p. 5-A.  Unit one inmates flooded cells and set fire to property, which plaintiff alleges resulted in water, garbage, feces, fecal matter and urine in his cell.  *Id*.  Plaintiff alleges that even though he was not involved in the riot, defendants "stripped" his cell, subjected him to excessive force, placed him in a freezing cell in only his underwear for twenty-four hours, put him on the disciplinary diet loaf for three days, and gave him only one drink of water per day for three days.  *Id*., p. 5-B.  Plaintiff also generally alleges that while he was in segregation, he was denied the following: personal property such as correspondence items, mail, legal and religious materials, clean clothes, shower shoes, soap, deodorant, lotion, toothpaste, and a toothbrush for eleven days; showers for nine days; emergency grievance forms, medical kites, and a pen; outdoor yard time for ten days; cleaning supplies to clean the urine and feces off the walls for eleven days; the ability to send legal mail for nineteen days; and was exposed to excessive noise and a lack of breathable air from fires related to the riot.  *Id*., p. 5-B.

**(a) Eighth Amendment Conditions of Confinement**

An inmate may challenge the conditions of his confinement as a violation of his Eighth Amendment right to be free from cruel and unusual punishment if he satisfies objective and subjective standards. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The objective standard requires prison officials to provide inmates with adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Id.* "Exercise has been determined to be one of the basic human necessities protected by the Eighth Amendment," and a long-term deprivation can constitute a violation of an inmate's rights. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). Excessive noise, twenty-four hour lighting, failure to provide an inmate with the opportunity for personal hygiene, and cells containing urine and feces can also constitute Eighth Amendment violations. *See Keenan v. Hall*, 83 F.3d 1083, 1089-92 (9th Cir. 1996); *see also Hoptowit v. Spellman*, 753 F2d 779, 783 (9th Cir. 1985) (denial of the "basic elements of hygiene" can constitute an Eighth Amendment violation).

The subjective standard requires a showing that prison officials were deliberately indifferent to the inmate's safety. *Johnson*, 217 F.3d at 731. An inmate also must prove that he sustained damages as a result of the prison official's deliberate indifference. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

**(b) Count II Analysis**

Defendants argue that most of the conditions plaintiff describes do not constitute inhumane conditions, and that plaintiff cannot prove he suffered any injuries (#28, p. 14). Plaintiff responds that the denial of all of his rights together constitutes a violation and sets out

8

a number of injuries he alleges resulted from the conditions of his confinement (#33, p. 8-14).[3]

Defendants' evidence demonstrates that there was a disturbance in unit one on September 26, 2005, and that unit staff named plaintiff as a participant (#28, Exhibit A, ¶ 11).  Defendants gave an order to strip all cells to prevent further flooding and burning of personal property.  *Id.*, ¶ 12.

In determining the objective standard, the court must evaluate the circumstances, nature and duration of the deprivation to determine whether it is inhumane or so egregious that it could result in significant injury or the unnecessary and wanton infliction of pain.  *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  For the following reasons, the court grants summary judgment on count II.

It is clear that defendants did not deprive plaintiff of food.  The evidence demonstrates that defendants placed plaintiff on the "alternative meal" for three days beginning September 27, 2005, but that he, along with other inmates in unit one, refused the diet loaf when it was offered (#33, Attachment 16 and Exhibits B, E-J).

Second, cases in the Ninth Circuit setting out Eighth Amendment violations for these types of deprivations involve either much longer time periods than those alleged here, or non-emergency situations.  *See Keenan v. Hall*, 83 F.3d 1083, 1089-92 (9th Cir. 1996) (six months) and *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (nine months); *see also Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (non-emergency conditions).  Plaintiff submits nine inmate affidavits attesting to the conditions of confinement in administrative segregation,

---

[3] Courts may not find Eighth Amendment violations based on the "totality of the circumstances;" instead, courts must look at whether each of the inmate's basic needs has been met.  *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985).  Thus, plaintiff's argument that the combined conditions of his confinement constitute an Eighth Amendment violation fails.

which generally support his allegations (#33, Exhibits B-J).  However, the court finds no serious deprivation because the alleged deprivations occurred under emergency circumstances and within a (less than) two-week period.  While the lack of cleaning supplies to clean plaintiff's cell of feces and urine could constitute a serious deprivation because such a situation could clearly cause illness in that amount of time, plaintiff provides no evidence that he sustained injuries as a result of living in an unsanitary cell.  In fact, plaintiff provides absolutely no evidence to support any of his allegations of injury.

Finally, there is no evidence that defendants acted with deliberate indifference.  On October 4, 2005, plaintiff sent an emergency grievance complaining that after eleven days in administrative segregation, he still did not have any personal property.  *Id*., Attachment 18. Defendants resolved the grievance the same day by issuing plaintiff his property.  *Id*.  Defendants were dealing with the aftermath of an uprising in a maximum security prison.  In such emergency prison situations, there is a violation only if the infliction of pain is applied "maliciously and sadistically for the very purpose of causing harm."  *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1986).  There is no such evidence here.

The court concludes that the conditions complained of are not sufficiently serious to meet the objective standard because the time alleged was short in duration and the alleged deprivations occurred during emergency circumstances.  There is also no evidence of injury or malicious intent to cause pain.  The court grants summary judgment on count II.

### 3. Count III

Plaintiff alleges that he sought medical care from defendant MacArthur in June and July 2005, for severe joint pain, daily nose bleeds, fatigue, and weakness (#8, p. 6).  Plaintiff contends that during a June 29, 2005 visit with defendant MacArthur, the defendant told plaintiff that he

would call an internal medical specialist if plaintiff's platelet count was low, and that it was likely that plaintiff suffered from rheumatoid arthritis. *Id*. Dr. MacArthur ordered a blood test, which indicated that plaintiff's platelet count was low. *Id*. Plaintiff alleges that after the test results were returned, defendant MacArthur denied his requested appointments, stating that he would see plaintiff in three months. *Id*. Plaintiff also alleges that while in administrative segregation, he sent two medical kites, one complaining of a migraine headache, and the other complaining of joint pain and fatigue, but received no care. *Id*., p. 6-A. Plaintiff alleges that he attempted to obtain medical care throughout October 2005, and after receiving denials and conflicting responses from defendant MacArthur, defendant finally saw him in November 2005. *Id*., p. 6-C. Plaintiff contends that defendant MacArthur informed him during the November visit that plaintiff was probably anemic, but that NDOC did not offer long term treatments. *Id*. Finally, plaintiff alleges that he wrote to defendant D'Amico regarding his complaints.

### (a) Deliberate Indifference and Sufficiently Serious Harm

A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). To prove deliberate indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Prison medical staff does not

violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

### (b) Count III Analysis

Defendants contend that plaintiff's medical records do not reflect that he has rheumatoid arthritis and that they found no letter from plaintiff in defendant D'Amico's records (#28, pp. 19-20).  Plaintiff contends that he "tried in vain" to obtain medical care from defendant MacArthur, and that only after defendant MacArthur left ESP and another doctor ran blood tests, was it discovered that plaintiff has Hepatitis C ("HPV") (#33, p. 2).[4]  Defendants reply that plaintiff merely disagrees with defendant MacArthur's treatment (#37, pp. 11-15).

A review of plaintiff's medical records reveals that in April 2003, plaintiff complained of shoulder pain and had a low platelet count (#41 (*sealed*)).[5]  In 2004, plaintiff complained of joint pain in his left knee, right ankle and both shoulders.  At that time, defendant MacArthur diagnosed the knee and ankle pain as old sports injuries and stated that plaintiff moved around well, nothing was red or swollen, and no treatment was necessary.  In July 2005, plaintiff complained of daily nose bleeds, lethargy, and constant joint pain.  Although defendant MacArthur noted no swollen knees or joints, because of the past low platelet count, he ordered blood work and testing for rheumatoid arthritis.  Plaintiff also received a "Kenalog" injection for his joint pain at that time.  The blood test results revealed that plaintiff's platelet counts were low,

---

[4] Now that he has been diagnosed with HPV, plaintiff concedes that he may not have rheumatoid arthritis, but states he alleged rheumatoid arthritis in his complaint only because defendant MacArthur told him he probably had it (#33, p. 17).

[5] On April 17, 2005, this court ordered defendants to submit plaintiff's medical records for an *in camera* review (#40).  The court received the records on April 30, 2005 (#41 (*sealed*)).

but that there was no indication of rheumatoid arthritis.  Defendant MacArthur told plaintiff he would re-test plaintiff's platelet levels in three months.  He ordered blood work on October 27, 2005.  On November 4, 2005, defendant MacArthur saw plaintiff and noted that he continued to complain of "all over joint pain" and fatigue.  Defendant MacArthur's notes state that while still low, plaintiff's platelet count had improved, there was no joint "redness or swelling," no evidence of "chronic dz," and that nothing was indicated for treatment.

Plaintiff's evidence supports the information contained in the above medical records (#33, Attachments 1-4, 6-14).  Plaintiff sent a medical kite to defendant MacArthur on October 2, 2005, complaining of poor treatment in administrative segregation, to which defendant MacArthur responded, "I know what has been going on.  What is your specific problem?"  *Id*., Attachment 7.  The other kites demonstrate that after complaining again of weakness, fatigue and joint pain, defendants scheduled plaintiff for an appointment on October 25, 2005, which apparently did not occur.  *Id*., Attachment 8.  When plaintiff requested another appointment, telling defendant MacArthur that he had been trying to get an appointment for over a month, defendant MacArthur asked, "Again, what is the medical problem?"  *Id*., Attachment 9.  Plaintiff submitted five more kites requesting an appointment and making similar complaints.  *Id*., Attachments 10-14.

Because the evidence demonstrates that plaintiff has complained of chronic pain for two years, the court finds the objective test is satisfied.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).  However, there is a genuine issue of material fact as to whether defendant MacArthur was deliberately indifferent to plaintiff's complaints of pain.  For over two years, plaintiff's platelet counts were low and he consistently complained of chronic pain and fatigue.  Defendants' own evidence states that low platelet counts can result from various medical conditions, *see* #28, Exhibit C; however, defendant MacArthur failed to test plaintiff for anything other than

rheumatoid arthritis, adopting a "wait and see" attitude despite plaintiff's continued complaints. Moreover, even though defendants' evidence includes an affidavit by Bruce Bannister, D.O., current NDOC Medical Director, stating that plaintiff's platelet count improved without intervention, #28, Exhibit C, the affidavit fails to note the plaintiff's platelet count was still much lower than normal.

During October 2005, plaintiff sent a total of eight medical kites to defendant MacArthur, and was not able to secure an appointment until November.  While the court is aware that prison medical is quite busy, defendant MacArthur's responses raise a question as to defendant MacArthur's state of mind.  Additionally, despite having given plaintiff a Kenalog 40 mg injection in July 2005 for his joint pain, the defendant told plaintiff in October 2005 that "Kenelog [sic] has nothing to do with those complaints."  *Id.*, Attachment 14.

There is a genuine issue of material fact as to whether defendant MacArthur may have both delayed and denied plaintiff treatment for his chronic pain.  The court denies summary judgment on count III.

### 4. Count IV

Plaintiff alleges that defendant Smit denied him access to the courts by returning a letter that plaintiff sent to his attorney, Kenneth Stover, on September 20, 2005 regarding plaintiff's criminal habeas corpus appeal (#8, p. 7).  Plaintiff contends that when the letter was returned to him, it had been opened and inspected without permission and out of his presence even though it was "clearly marked 'legal mail, confidential, privileged.'"  *Id.*  Plaintiff alleges that attached to the letter was a post-it note, in defendant Smit's handwriting, which stated that Kenneth Stover was not listed as a licensed attorney in the State of Nevada.  *Id.*  Plaintiff contends he promptly sent another letter to Mr. Stover regarding the conditions of his confinement in administrative

segregation, requesting that Mr. Stover attempt to remove plaintiff, but this letter was also returned two weeks later, opened, and with another similar post-it note. *Id.*, p. 7-A. Plaintiff alleges that had his mail been sent, defendants could have avoided this lawsuit. *Id.*

### (a) Meaningful Access to the Courts

Pursuant to the Fourteenth Amendment due process clause, inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). That access must be "adequate, effective, and meaningful." *Id.* at 822. To prove a violation of this right, an inmate must demonstrate "actual injury," in that there was a "specific instance" in which he was denied access. *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996). "The injury requirement is not satisfied by just any type of frustrated legal claim;" the Court has stated that prisoners have a right to access to the courts only in relation to direct appeals from the convictions for which they were incarcerated, habeas petitions or civil rights actions challenging the conditions of their confinement. *Casey*, 518 U.S. at 354-55.

### (b) Count IV Analysis

Defendant Smit maintains that he does not work in the property room and that plaintiff has failed to allege an injury (#28, p. 21). Plaintiff argues that defendants "denied" his legal mail, and asserts if it had not happened, "we might not all been [sic] before this court now" (#33, p. 20).

Plaintiff's submits copies of two undated notes which state that the mail room was returning plaintiff's mail because the addressee, Kenneth Stover, was not a licensed Nevada attorney (#33, Exhibit 22). Defendant Smit submits an affidavit, which states that he works in the ESP property room, that he does not deal with legal mail, that there is a separate officer who

deals with legal mail, and that he does not recall ever handling any of plaintiff's mail, legal or otherwise (#28, Exhibit D, ¶¶ 4-6).

While it is true that Kenneth Stover is a licensed Nevada attorney,[6] and that there is an issue of fact as to whether defendant Smit wrote the post-it notes, neither of these issues is material to the resolution of count IV. To prove an access to the courts violation, a plaintiff must demonstrate "actual injury." Besides speculating that had defendants sent his mail to Attorney Stover, plaintiff would not have filed this lawsuit, plaintiff fails to allege any actual injury in his complaint (#8, pp. 7-7A). Moreover, viewing the evidence in the light most favorable to plaintiff, the court concludes that there is no evidence of actual injury. The court grants summary judgment on count IV.

### 5. Count V

Plaintiff alleges that in March 2006, he returned to his prison job in the law library (#8, p. 8). On March 15, 2006, plaintiff filed this lawsuit. *Id.* Plaintiff alleges that on March 30, 2006, defendant Bainbridge conducted a videotaped interview of plaintiff regarding an incident in the dining hall. *Id.* Plaintiff contends that in retaliation for filing this lawsuit and naming Bainbridge as a defendant, defendant Bainbridge sent plaintiff to "lockdown" and told plaintiff he should "keep his mouth shut." *Id.*, p. 8. Plaintiff further alleges that on April 11, 2006, he attended a full classification committee hearing, during which he was told that he was not under investigation, the committee knew he did not participate in any wrong doing, and that his law library position was waiting for him upon release from segregation. *Id.*, p. 8-A. Plaintiff alleges thereafter he was informed that defendant Bainbridge had denied him release from segregation.

---

[6] Mr. Kenneth Stover, Nevada Bar number 5792, is easily found through the "Attorney Search" function on the State Bar of Nevada's website. *See* www.nvbar.org/findalawyer.asp.

*Id.* Plaintiff alleges that he lost his law library position as a result of these incidents. *Id.*

### (a) First Amendment Retaliation

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004). Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Pratt*, 65 F.3d at 807. The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id.* at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). The Ninth Circuit has recognized that "timing can properly be considered as circumstantial evidence of retaliatory intent." *Id.*, *citing Pratt*, 65 F.3d at 808.

### (b) Count V Analysis

Defendant Bainbridge maintains that the Attorney General's office did not inform him of this lawsuit until they accepted service on his behalf in September 2006; as such, plaintiff's placement in administrative segregation in March 2006 could not have been in retaliation for this lawsuit because defendant Bainbridge did not know about it at the time (#28, p. 24). Defendant Bainbridge also argues that plaintiff's own evidence demonstrates that he refused to cooperate with the investigation, so defendant Bainbridge accordingly placed him in administrative segregation. *Id.*

Plaintiff's evidence reveals that defendant Bainbridge placed him in administrative

segregation on March 30, 2006, after being administered a notice of classification (#33, Exhibit 24).  On April 13, 2006, plaintiff requested information from his case worker regarding the reasons he was locked up, and the response was "I do not know the reason you were denied advancement.  AWO Brooks only told me that Sgt Bainbridge has denied your advancement to Unit 8."  *Id.* Exhibit 25.

The court concludes that plaintiff, who has the burden of pleading and proving the absence of legitimate penological goals, has failed to demonstrate that defendant Bainbridge acted without such goals in placing plaintiff in administrative segregation.  A review of the evidence reveals that plaintiff admitted in a grievance that in response to defendant Bainbridge's question during the interview if plaintiff knew why the defendant was interviewing him, plaintiff "responded honestly with a one word question 'harassment?,' because I did not request to be interviewed, had nothing to say, but was still given a direct order to go" (#33, Exhibit 27).  This indicates to the court that plaintiff did not cooperate with defendant Bainbridge's investigation, first by refusing to come to his office to be interviewed, and second, by admittedly responding flippantly to defendant Bainbridge's questions.  This evidence is consistent with defendant's affidavit stating that plaintiff refused orders, was "disruptive," and "became belligerent" (#28, Exhibit A, ¶ 13).  Additionally, plaintiff has failed to refute defendant Bainbridge's affidavit stating that he did not know about this lawsuit until September 2006.  *Id.*, ¶ 14-15.  The docket sheet supports defendant Bainbridge's affidavit (#15).  Finally, plaintiff has clearly moved forward with this case – the very litigation that he alleges caused the retaliation – thus, there is no evidence that defendants "chilled" his First Amendment rights.   The court grants defendant's motion for summary judgment on count V.

### 6. Personal Participation and Immunity[7]

#### (a) Personal Participation

Defendant D'Amico argues that plaintiff has failed to allege how he was personally involved in the alleged constitutional violation in count III (#20, p. 11).  Plaintiff contends that he wrote to defendant D'Amico for help on October 3, 2003 (#33, p. 12).  A person deprives another of a constitutional right for the purposes of section 1983 only if that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which that person is legally required to do that causes the deprivation of which complaint is made." *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) *quoting Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Karen Walsh, NDOC Health Information Director, states in her affidavit that, despite a search, they found no letter in defendant D'Amico's correspondence files (#28, Exhibit B).  Plaintiff submits a letter he allegedly wrote and sent to defendant D'Amico on October 3, 2005; however, this letter is not authenticated or signed, and there is no evidence plaintiff ever mailed it (#33, Attachment 15).  The court concludes that there is no evidence that defendant D'Amico personally participated in the alleged constitutional violations, and grants summary judgment as to defendant D'Amico.

#### (b) Eleventh Amendment Immunity

Plaintiff has sued defendant MacArthur in both his individual and official capacity (#8, pp. 2-2A).  Defendant argues that plaintiff cannot obtain money damages against him in his official capacity (#28, pp.6-8).  He further contends that plaintiff cannot obtain an injunction

---

[7] The court addresses the remaining issues only as to count III and the remaining defendants, MacArthur and D'Amico.

1
2
3
4
5
6

against him in his official capacity because the Eleventh Amendment immunity exception that would permit such an injunction applies only when a state official is enforcing a state law that violates federal law (#28, pp.6-8).  Defendants maintain that here, plaintiff alleges only that defendant MacArthur is directly violating his rights under the Eighth Amendment, not that a state law violates the Eighth Amendment (#37, pp. 8-11).

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Section 1983 claims are limited by the Eleventh Amendment, and the Supreme Court has held that a state official sued in his official capacity is not a "person" under section 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  However, an exception to this rule exists – when a state official is sued in his official capacity for *prospective* injunctive relief, he is considered a "person" for the purposes of section 1983.  *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997) (emphasis added), *citing Ex Parte Young*, 209 U.S. 123 (1908).  This exception is known as the *Ex Parte Young* doctrine.  *Doe*, 131 F.3d at 839. Defendant cites only *Ex Parte Young* in support of his theory that the *Ex Parte Young* doctrine applies only when a state official is enforcing a state law which violates the constitution. Defendant cites to no other Supreme Court case or Ninth Circuit case that has set out this legal theory.[8]  In this case, plaintiff seeks an injunction ordering defendant to allow plaintiff to see an internal medicine specialist and transfer him away from ESP (#8, p. 11).  Plaintiff's request for an injunction involves events that will occur in the future; therefore, he requests *prospective* relief to remedy a constitutional violation.  The court denies summary judgment as to plaintiff's suit for an injunction against defendant MacArthur in his official capacity.

25

*///*

26

27
28

_____

[8] Defendant cites to a district court case from the Northern District of California which discussed this issue (#37, p. 11, *citing NASD Dispute Resolution, Inc. V. Judicial Council of California*, 232 F.Supp.2d 1055, 1064 (N.D. Cal. 2002)).  However, that case is not controlling.

**(c) Qualified Immunity**

Defendant MacArthur argues that he is entitled to qualified immunity (#28, pp. 9-10).  The defense of qualified immunity protects state officials sued in their individual capacities unless the conduct complained of violates a clearly established constitutional or statutory right of which a reasonable person would have known.  As the court concluded above, there is a genuine issue of material fact as to whether defendant MacArthur acted with deliberate indifference to plaintiff's serious medical condition.  If there is a material dispute as to the facts regarding whether the actions of the defendants violated a constitutional right, the case must proceed to trial.  *LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000), *citing Act-Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).  Such is the case here.  The court denies qualified immunity for defendant MacArthur.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

- Count I: plaintiff has no Fourteenth Amendment liberty interest in remaining free from administrative segregation and was therefore owed no procedural due process;

- Count II: the conditions of confinement in administrative segregation were not serious considering the duration of the deprivation and the emergency circumstances, there is no evidence of injury to plaintiff, and there is no evidence of malice on the part of the defendants;

- Count III: there is a material issue of fact as to whether defendant MacArthur acted with deliberate indifference to plaintiff's complaints of chronic joint pain;

- Count IV: plaintiff has not alleged nor provided evidence to demonstrate he suffered actual injury in relation to his access to the courts claim;

- Count V: plaintiff has failed to meet his burden to prove the absence of legitimate penological goals on the part of defendant Bainbridge in placing plaintiff in administrative segregation on March 30, 2006;

1

2

3
    •      There is no evidence that defendant D'Amico personally participated in denying plaintiff medical care;

4

5

6
    •      Pursuant to the Eleventh Amendment, plaintiff may not sue defendant MacArthur in his official capacity for money damages, but is permitted to bring suit against defendant MacArthur for prospective injunctive relief; and

7

8
    •      Defendant MacArthur is not entitled to qualified immunity because there is a material issue of fact as to whether he violated plaintiff's Eighth Amendment rights.

9
As such, the court recommends that defendants' motion to dismiss (#28) be:

10

11
**GRANTED** as to counts I, II, IV and V, as to defendant MacArthur in his official

12
capacity for money damages, and as to defendant D'Amico; and

13
**DENIED** as to count III and defendant MacArthur in his individual capacity and in his

14
official capacity for injunctive relief.

15
The parties are advised:

16

17
1.     Pursuant to 28 U.S.C. § 636(b)(1)© and Rule IB 3-2 of the Local Rules of

18
Practice, the parties may file specific written objections to this report and recommendation

19
within ten days of receipt. These objections should be entitled "Objections to Magistrate

20
Judge's Report and Recommendation" and should be accompanied by points and authorities

21
for consideration by the District Court.

22
2.     This report and recommendation is not an appealable order and any notice of

23
appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District

24
Court's judgment.

25

26
///

27
///

28

22

1
2
**IV.  RECOMMENDATION**

3      **IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#28)

4  be:

5      **GRANTED** as to counts I, II, IV and V, as to defendant MacArthur in his official

6  capacity for money damages, and as to defendant D'Amico; and

7      **DENIED** as to count III and defendant MacArthur in his individual capacity and in his

8
9  official capacity for injunctive relief.

10     **DATED:** June 7, 2007.

11
12                                    _____

13                                    **UNITED STATES MAGISTRATE JUDGE**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

23