FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

OCT 27

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY_____ DEPUTY

1    **UNITED STATES DISTRICT COURT**

2    **DISTRICT OF NEVADA**

3

4    JOHN MICHAEL ALLINGER,                )
                                           )          3:06-CV-00139-LRH (VPC)
5                   Plaintiff,             )
                                           )
6    vs.                                   )          **REPORT AND RECOMMENDATION**
                                           )          **OF U.S. MAGISTRATE JUDGE**
7    E.K. MCDANIEL, et al.,                )
                                           )
8                   Defendants.            )          October 27, 2008
     _____)
9

10          This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

11   District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

12   U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for summary

13   judgment (#74). Defendant opposed (#75) and plaintiff replied (#91). The court has thoroughly

14   reviewed the record and the motions and recommends that plaintiff's motion for summary

15   judgment (#74) be denied.

16                          **I. HISTORY & PROCEDURAL BACKGROUND**

17          Plaintiff John Michael Allinger ("plaintiff"), a *pro se* prisoner, is currently incarcerated

18   at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC")

19   (#52). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First

20   Amendment right to access to the courts, Eighth Amendment right against cruel and unusual

21   punishment, and Fourteenth Amendment right to due process (#8).  Plaintiff names as defendants

22   E.K. McDaniel, ESP Warden; Debra Brooks, ESP Associate Warden of Operations; John

23   Messick, ESP Lieutenant, Shift Supervisor; Steven MacArthur, former ESP Medical Director;

24   Glen Whorton, former NDOC Director; Ted D'Amico, former NDOC Medical Director; Jerry

25   Bainbridge, ESP Sergeant, Correctional Enforcement Response Team; and Wade Smit, ESP

26   Senior Correctional Officer. *Id.*, pp. 2-2A.

27          The District Court dismissed the majority of plaintiff's claims in its June 7, 2007, Report

28   and Recommendation (#42, adopted and accepted by District Judge Larry R. Hicks in #47). Count

1  III remains, and alleges that defendant, Dr. Steven MacArthur, violated plaintiff's Eighth
2  Amendment right against cruel and unusual punishment through his deliberate indifference to
3  plaintiff's medical needs (#8, #42). In denying summary judgment on this claim, the court found
4  that there was "a genuine issue of material fact as to whether defendant MacArthur was
5  deliberately indifferent to plaintiff's complaints of pain....[and] as to whether defendant
6  MacArthur may have both delayed and denied plaintiff treatment for his chronic pain." (#42, p.
7  13-14).

8      The court notes that the plaintiff is proceeding *pro se*.  "In civil rights cases where the
9  plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff
10 the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th
11 Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

12                    **II. DISCUSSION & ANALYSIS**
13      **A.    Discussion**
14          **1.    Summary Judgment Standard**
15      Summary judgment allows courts to avoid unnecessary trials where no material factual
16 disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th
17 Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in
18 dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(C).
19 The court must view all evidence and any inferences arising from the evidence in the light most
20 favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In
21 inmate cases, the courts must

22          [d]istinguish between evidence of disputed facts and disputed
            matters of professional judgment.  In respect to the latter, our
23          inferences must accord deference to the views of prison
            authorities.  Unless a prisoner can point to sufficient evidence
24          regarding such issues of judgment to allow him to prevail on the
            merits, he cannot prevail at the summary judgment stage.
25
26 *Beard v. Banks*, 548 U.S. 521, 526, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could
27 differ on the material facts at issue, however, summary judgment should not be granted.
   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).
28

                                    2

1    The moving party bears the burden of informing the court of the basis for its motion, and

2    submitting evidence which demonstrates the absence of any genuine issue of material fact.

3    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

4    the party opposing the motion may not rest upon mere allegations or denials in the pleadings but

5    must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson*, 477

6    U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for

7    discovery, against a party who fails to make a showing sufficient to establish the existence of an

8    element essential to that party's case, and on which that party will bear the burden of proof at

9    trial.  *Celotex*, 477 U.S. at 322-23.

10   **B.      Analysis**

11   Plaintiff alleges that he sought medical care from Dr. MacArthur in June and July 2005,

12   for severe joint pain, daily nose bleeds, fatigue, and weakness (#8, p. 6).  Plaintiff contends that

13   during a June 29, 2005, visit with Dr. MacArthur, the doctor told plaintiff that he would call an

14   internal medical specialist if plaintiff's platelet count was low, and that it was likely that plaintiff

15   suffered from rheumatoid arthritis.  *Id.*  Dr. MacArthur ordered a blood test, which indicated that

16   plaintiff's platelet count was low.  *Id.*  Plaintiff alleges that after the test results were returned,

17   Dr. MacArthur denied his requested appointments, stating that he would see plaintiff in three

18   months.  *Id.*  Plaintiff also alleges that while in administrative segregation, he sent two medical

19   kites, one complaining of a migraine headache, and the other complaining of joint pain and

20   fatigue, but received no care.  *Id.*, p. 6-A.  Plaintiff claims that he attempted to obtain medical

21   care throughout October 2005, and after receiving denials and conflicting responses from Dr.

22   MacArthur, defendant finally saw him in November 2005.  *Id.*, p. 6-C.  Plaintiff contends that Dr.

23   MacArthur informed him during the November visit that plaintiff was probably anemic, but that

24   NDOC did not offer long term treatments.  *Id.*  Finally, plaintiff alleges that he wrote to Dr.

25   D'Amico regarding his complaints.

26   **(a)      Deliberate Indifference and Sufficiently Serious Harm**

27   A prison official violates the Eighth Amendment when he acts with "'deliberate

28   indifference' to a substantial risk of serious harm to an inmate."  *Farmer v. Brennan*, 511 U.S.

3

1   825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff's case must satisfy an

2   objective standard – that the deprivation was serious enough to amount to cruel and unusual

3   punishment, and a subjective standard – deliberate indifference. *Id.* at 834; *see also Wilson v.*

4   *Seiter*, 501 U.S. 294, 297-304 (1991).

5       The objective standard, a "serious medical need," is met if the failure to treat a prisoner's

6   condition could result in further significant injury or the "unnecessary and wanton infliction of

7   pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Ninth Circuit's examples of serious

8   medical needs include "the existence of an injury that a reasonable doctor or patient would find

9   important and worthy of comment or treatment; the presence of a medical condition that

10  significantly affects an individual's daily activities; or the existence of chronic and substantial

11  pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

12      The subjective standard of deliberate indifference requires "'more than ordinary lack of

13  due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835, *quoting Whitley v.*

14  *Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles

15  of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent

16  of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.* To prove deliberate

17  indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally

18  interfered with medical treatment or that the way prison staff provided medical care indicates

19  deliberate indifference, and that plaintiff sustained damages as a result of such conduct.

20  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Prison medical staff do not

21  violate the Eighth Amendment simply because their opinion concerning medical treatment

22  conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th

23  Cir. 1981).

24              **(b)        Deliberate Indifference Analysis**

25      As plaintiff correctly points out, this court has already found that the objective test is

26

27

28

                                            4

1   satisfied (*see* #42, p. 13).[1] At that time, this court also found that there remained a genuine issue

2   of material fact "as to whether defendant MacArthur may have both delayed and denied plaintiff

3   treatment for his chronic pain." *Id.* at 14. In reaching this conclusion, the court noted that

4   although plaintiff complained of chronic pain and fatigue and had low platelet counts for over two

5   years, defendant failed to test plaintiff for anything other than rheumatoid arthritis. *Id.* at 13. Thus,

6   the remaining issue in this case is whether defendant was deliberately indifferent to plaintiff's

7   complaints of chronic pain and fatigue.

8                          **1.      Plaintiff's medical history**

9           In support of his position that defendant was deliberately indifferent under the subjective

10  test, plaintiff cites to his history of  chronic pain, daily nose bleeds, fatigue and weakness.

11  Plaintiff asserts that given Dr. MacArthur's medical expertise, he knew that plaintiff's symptoms

12  were indicative of hepatitis C, but that Dr. MacArthur intentionally failed to test plaintiff for HCV

13  or treat any of his symptoms (#74, p. 1).

14          The information contained in plaintiff's medical records is undisputed. In August 2002,

15  plaintiff complained of shoulder pain and saw Dr. Williamson and blood tests indicated that

16  plaintiff had a low platelet count (#74, exh. A, B, E). Dr. Williamson prescribed prednisone and

17  ibuprofen several times in 2002 and 2003. *Id.* exh. B. In 2004, plaintiff complained of joint pain

18  in his left knee, right ankle, and both shoulders. At that time, Dr. MacArthur initially diagnosed

19  the knee and ankle pain as old sports injuries and stated that plaintiff moved around normally,

20  nothing was red or swollen, and no treatment was necessary. *Id.* exh. E. After complaining of

21  daily nose bleeds, lethargy, and constant joint pain in late June 2005, Dr. MacArthur saw plaintiff

22  in early July. *Id.* exh. I, J. Dr. MacArthur noted that plaintiff had no swollen knees or joints.

23  However, because of the past low platelet count, he ordered blood work and testing for

24  rheumatoid arthritis. *Id.* exh. J. Plaintiff also received a "Kenalog" injection at that time (#41

25  (*sealed*)).  The blood test results revealed that plaintiff's platelet counts were low, but that

26

27          [1] In the June 8, 2007, Report and Recommendation, the court stated, "[b]ecause the evidence

28  demonstrates that plaintiff has complained of chronic pain for two years, the court finds the objective
    test is satisfied."

1   plaintiff did not have rheumatoid arthritis (#74, exh. M).

2   Plaintiff asked to see Dr. MacArthur to discuss the results of the blood tests in July 2005.

3   Dr. MacArthur told plaintiff that no visit was necessary and that he would re-test plaintiff's

4   platelet levels in three months. *Id*. exh. N. Plaintiff continued to send medical kites to Dr.

5   MacArthur throughout September and October. *See id*. exhs. O-Q, S-Y). On September 23, 2005,

6   plaintiff sent a medical kite to Dr. MacArthur and complained of a bad headache and requested

7   "an emergency pain packet." Dr. MacArthur responded that a nurse would see plaintiff for his

8   headache. *Id*. exh. O. On October 2, 2005, plaintiff sent a medical kite to Dr. MacArthur and

9   complained of poor treatment in administrative segregation, claiming he was "barely healthy

10  enough to pull myself out of bed." Dr. MacArthur responded, "I know what has been going on -

11  what is your specific problem?" *Id*. exh. P. Then, on October 4, 2005, plaintiff sent another

12  medical kite that he was suffering from extreme fatigue, joint pain, and weakness and requested

13  another blood test. An appointment with Dr. MacArthur was scheduled for October 25, 2005. *Id*.

14  exh. Q. However, this appointment did not occur as scheduled, and Dr. MacArthur contends that

15  the appointment could not be kept because the "entire unit was on lockdown" due to a riot that

16  occurred on September 23, 2005 (#75, p. 8). On October 25, 2005, plaintiff sent a medical kite

17  to Dr. MacArthur to request that the cancelled appointment be rescheduled, told Dr. MacArthur

18  defendant that he had been trying to get an appointment for over a month. Dr. MacArthur

19  replied, "Again, what is the medical problem?" (#74, exh. S). Plaintiff then submitted five more

20  kites requesting an appointment and making similar complaints about extreme fatigue, joint pain,

21  weakness, and daily nose bleeds. *Id*. exh. T-X. Dr. MacArthur responded that a blood test should

22  be performed and that plaintiff would be scheduled for a visit. *Id*. exh. T.

23  On October 27, 2005, Dr. MacArthur ordered blood work, which indicated that plaintiff's

24  platelet count was low, but that it had improved. On November 4, 2005, Dr. MacArthur

25  examined plaintiff and noted that he continued to complain of "all over joint pain" and fatigue.

26  Dr. MacArthur's notes state that while still low, plaintiff's platelet count had improved, there

27  was no joint redness or swelling, no evidence of "chronic dz," and that nothing was indicated for

28  treatment. *Id*. exh. Z.

6

## 2.      Previous proceedings and findings

In the June 7, 2007, Report and Recommendation, this court made findings regarding whether Dr. MacArthur was deliberately indifferent. With regard to the objective test, the court found: "[b]ecause the evidence demonstrates that plaintiff has complained of chronic pain for two years, the court finds the objective test is satisfied." (#42, p. 13, *citing Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)). With regard to the subjective test, the court found:

> "...there is a genuine issue of material fact as to whether defendant MacArthur was deliberately indifferent to plaintiff's complaints of pain. For over two years, plaintiff's platelet counts were low and he consistently complained of chronic pain and fatigue. Defendants' own evidence states that low platelet counts can result from various medical conditions; however, defendant MacArthur failed to test plaintiff for anything other than rheumatoid arthritis, adopting a "wait and see" attitude despite plaintiff's continued complaints. Moreover, even though defendants' evidence includes an affidavit by Bruce Bannister, D.O., current NDOC Medical Director, stating that plaintiff's platelet count improved without intervention, the affidavit fails to note the plaintiff's platelet count was still much lower than normal.
>
> During October 2005, plaintiff sent a total of eight medical kites to defendant MacArthur, and was not able to secure an appointment until November. While the court is aware that prison medical is quite busy, defendant MacArthur's responses raise a question as to defendant MacArthur's state of mind. Additionally, despite having given plaintiff a Kenalog 40 mg injection in July 2005 for his joint pain, the defendant told plaintiff in October 2005 that "Kenelog [sic] has nothing to do with those complaints."
>
> There is a genuine issue of material fact as to whether defendant MacArthur may have both delayed and denied plaintiff treatment for his chronic pain."

*Id.*, p. 13-14.

## 3.      New evidence

Much of the evidence plaintiff presents here was already submitted in his response to Dr. MacArthur's first motion to dismiss (#28). There, plaintiff presented the court with all of his medical kites and defendant's responses along with other exhibits. Plaintiff also presented the declaration of Nurse Lorraine Memory with his objection to the Report and Recommendation

1   (#43, exh. A). Dr. MacArthur provided plaintiff's medical records to the court (#41 (*sealed*)).[2]

2   Here, in addition to his medical records and Memory's declaration, plaintiff bases his arguments

3   on Dr. MacArthur's responses to discovery and numerous medical publications (*see* #74, p. 8-11

4   and exhibits).

5                                **a)    Discovery responses**

6          In his supplemental response to plaintiff's first request for interrogatories, Dr. MacArthur

7   stated that he ordered blood tests for plaintiff on July 14, 2005 and October 31, 2005, with an

8   additional rheumatoid arthritis test on July 14, 2005 (#75, exh. D, p. 4). He also states that allergy

9   medication was ordered twice a day for months for seasonal allergies and that a Kenalog shot was

10  given for seasonal allergies on July 11, 2005.[3] Additionally, when asked what medical symptoms

11  would lead defendant to test for HCV, he responded that obvious symptoms include jaundice and

12  fatigue, but that in many cases, the symptoms are very subtle (*Id.*, p. 5).

13         In response to plaintiff's first request for admissions, Dr. MacArthur stated that former

14  medical director of NDOC, Ted D'Amico, allowed testing for HCV, that all treatments which

15  were expensive went through Dr. D'Amico, and that defendant did not believe that Dr. D'Amico

16  had ever approved treatment for HCV because "all data indicates that such treatment was

17  ineffective as inmates that were treated had re-infected themselves within 5 years after treatment."

18  *Id.* exh. G, p. 3. Dr. MacArthur also admitted that HCV causes weakness, fatigue, and lowered

19  blood counts as symptoms. However, Dr. MacArthur stated that most cases of HCV are

20

21         [2] On April 17, 2007, this court ordered defendants to submit plaintiff's medical records for an *in camera* review (#40). The court received the records on April 30, 2007 (#41 (*sealed*)).

22

23         [3]That defendant gave Kenalog for allergies conflicts with other evidence, which indicates
    defendant prescribed the Kenalog shot to treat plaintiff's shoulder pain (*see* #41 (*sealed*), p. 7).

24  Additionally, defendant ordered the Kenalog shot in conjunction with testing for rheumatoid arthritis.
    Although Kenalog is used to treat allergies, as defendant states, it is also used to treat "rheumatic

25  disorders," including rheumatoid arthritis. *See* FDA safety information on Kenalog-40 Injection,
    http://www.fda.gov/MedWatch/safety/2006/Nov_PIs/Kenalog-40Inj_PI.pdf.   Thus,   although

26  defendant claims that Kenalog was administered to treat allergies, given that plaintiff was told it was
    administered for his joint pain, that it was given when defendant suspected plaintiff had rheumatoid

27  arthritis, and that Kenalog's indications and usage include treatment of rheumatoid arthritis, the

28  evidence indicates that plaintiff received the Kenalog shot for treatment of his joint pain.

                                          8

1   asymptomatic.

2      In response to plaintiff's first request for interrogatories, Dr. MacArthur stated that

3   plaintiff's complaints of severe chronic pain, daily nose bleeds, fatigue, and weakness "could not

4   be medically verified." *Id.*, exh. I, p. 5. Dr. MacArthur reiterates this point in the second request

5   for interrogatories, where plaintiff asked defendant to describe in detail the increasing severity

6   of plaintiff's health, and Dr. MacArthur responded that "[i]ncreasing severity of complaint is not

7   the same as increasing severity of actual conditions. There were no medical indications Plaintiff

8   had any worsening conditions." *Id.*, exh. H, p. 4. Dr. MacArthur also states that he did not believe

9   plaintiff's complaints could be medically verified in his affidavit. *Id.* exh. E, p. 2.[4]

10                    **b)      Memory's declaration and medical texts**

11      Dr. MacArthur objects to the consideration of Nurse Memory's declaration, arguing that

12   it is irrelevant and prejudicial. Defendants raised this argument before when plaintiff attached the

13   declaration to his objection to Magistrate Judge's Report and Recommendation (declaration at

14   #43, exh. A, defendant's motion to strike at #45, p. 2-5). Judge Hicks denied defendant's motion

15   to strike, finding "some relevance to Plaintiff's Exhibit A" (#47, p. 2). In her declaration, Memory

16   states that Dr. MacArthur was indifferent to the medical needs of all inmates, that as a general

17   rule, no hepatitis testing is allowed, that treatment for Hepatitis C is not instituted unless

18   numerous conditions are first met, and that she believes defendant's indifference to be deliberate

19   because of actions and statements defendant had made in her presence (#74, p. 24).[5]

20      Plaintiff also attaches numerous medical texts to prove the symptoms of HCV and that

21   he exhibited such symptoms. Defendant argues that the medical texts and the *USA Today* article

22   _____

23      [4]The defendant's continued argument that none of plaintiff's complaints could be medically
    verified, thus excusing defendant from his failure to perform additional testing or treatment, is not
24   entirely credible. Plaintiff's low platelet level and complaints extended over a two-year period. Dr.
    MacArthur must have believed that some of plaintiff's complaints were verifiable or increasing in
25   severity, as Dr. MacArthur thought that plaintiff suffered from rheumatoid arthritis.

26      [5]The declaration specifically states that defendant has said he wants to punish some of the
    inmates, that defendant stated that "he was sick and tired of dealing with all these whiney people,"
27   and that defendant had bragged on many occasions about how much money he had saved the prison
28   system by denying testing and treatment.

1    should not be considered because they are irrelevant and have not been established as reliable

2    authority (#75, p. 21-22). The court declines to address this argument because even taking into

3    account all of the medical texts that plaintiff has attached, the court cannot say as a matter of law

4    that defendant was deliberately indifferent to plaintiff's medical needs. Although the court agrees

5    with plaintiff that the texts discuss the symptoms that plaintiff appears to have exhibited, plaintiff

6    does not prove as a matter of law that defendant was deliberately indifferent to his medical needs.

7           The evidence that plaintiff presents demonstrates that perhaps defendant should have

8    known that plaintiff had a serious condition given his chronic pain, weakness, fatigue, and low

9    platelet count and that defendant possibly should have tested for something other than rheumatoid

10   arthritis after plaintiff tested negative. However, the evidence does not establish as a matter of law

11   that defendant recklessly disregarded a substantial risk of serious harm to plaintiff or that

12   defendant intentionally interfered with plaintiff's medical treatment. Thus, there remains an issue

13   of fact as to whether defendant acted with deliberate indifference with respect to plaintiff's

14   medical needs.

15          Defendant first believed that plaintiff suffered from rheumatoid arthritis and thus tested

16   for this and treated plaintiff for such symptoms with the Kenalog shot. It became clear that

17   plaintiff did not have rheumatoid arthritis in July 2005. Plaintiff was not tested for any other

18   disorders and was not treated or seen again until November 2005. Plaintiff's new evidence

19   indicates that he displayed symptoms of HCV, and that plaintiff received some, although perhaps

20   minimal, care. However, plaintiff has not established that defendant acted with an intentional or

21   reckless state of mind. Dr. MacArthur did not believe plaintiff exhibited signs of HCV, which is

22   why no further testing or treatment was administered. Defendant also states that he did not base

23   plaintiff's treatment on cost (#75, exh. E, p. 2-3). None of defendant's statements in his affidavit

24   or in discovery documents conclusively proves that defendant acted with the intent to deny or

25   delay plaintiff medical treatment. In addition, the declaration of Nurse Memory also does not

26   remove all issues of material fact with regard to defendant's state of mind when treating plaintiff

27   specifically. It is true that the declaration raises serious questions as to the quality of care Dr.

28   MacArthur provided to inmates and how he felt about providing any care to inmates in general.

1  However, the declaration does not address how Dr. MacArthur felt about plaintiff's care or illness
2  specifically; therefore, it does not eliminate all issues of fact from this case.

3         There remains a question of fact as to whether Dr. MacArthur did not treat plaintiff for
4  four months after the rheumatoid arthritis test and did not perform any follow-up tests for other
5  likely disorders, including HCV, because he was deliberately indifferent toward plaintiff's
6  medical care, or if he was simply negligent in his diagnosis and treatment of plaintiff.
7  Additionally, with regard to damages, based on the evidence presented, plaintiff has not
8  demonstrated that even if defendant had tested him for HCV, any long term treatment options
9  would have been available to him, as defendant was not permitted to authorize such treatment.
10  There is an issue of material fact as to whether plaintiff sustained damages as a result of
11  defendant's conduct. Therefore, summary judgment is denied.

12                               **III. CONCLUSION**

13         Based on the foregoing and for good cause appearing, the court concludes that there is a
14  material issue of fact as to whether defendant MacArthur acted with deliberate indifference to
15  plaintiff's complaints of chronic joint pain, fatigue, and weakness.

16         As such, the court recommends that plaintiff's motion for summary judgment (#74) be
17  **DENIED**.

18         The parties are advised:

19         1.     Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of
20  Practice, the parties may file specific written objections to this report and recommendation within
21  ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report
22  and Recommendation" and should be accompanied by points and authorities for consideration
23  by the District Court.

24         2.     This report and recommendation is not an appealable order and any notice of
25  appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's
26  judgment.

27  ///

28  ///

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  RECOMMENDATION

IT IS THEREFORE RECOMMENDED that plaintiff's motion for summary judgment (#74) be DENIED.

DATED: October 27, 2008.

_____

UNITED STATES MAGISTRATE JUDGE